**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-01953-WYD-MEH

**MALIBU MEDIA, LLC**,
    Plaintiff,
v.

**BRIAN BATZ, TARA W. CAMERON, and JOHN DOES
1-1, 5,7, 9-11**, and **15-42**,
    Defendants.

---

**TARA W. CAMERON'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT [Doc#: 82], PURSUANT TO
F.R.C.P. 12(b)(6), WITH INCORPORATED AUTHORITY**

---

    **COMES NOW** Tara W. Cameron, by and through the law firm of Riggs, Abney, Neal, Turpen, Orbison & Lewis, Steven Janiszewski, and, pursuant to F.R.C.P. 12(b)(6), moves this Court to dismiss the Second Amended Complaint and, as grounds therefor, states as follows**:**

**LEGAL STANDARDS**

**I.  Revised Pleading Standard Based On *Iqbal* and *Twombly***

    To survive a motion to dismiss under F.R.C.P. 12(b), a plaintiff must put forth sufficient "[f]actual allegations ... to raise a right to relief above the speculative level." *Bell All. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Moreover, a complaint must contain enough allegations of fact, taken as true, to state a claim for relief that is facially plausible. *D. Al-Owhali v. Holder,* 687 F.3d 1236, 1239-40(10th Cir. 2012) (citing *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1937 (2009). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The

[plaintiff'sl allegations must be enough that... the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008). A complaint's "basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558 (quoting 5 C. Wright and A. Miller, Fed. Prac. & Proc. § 1216, pp. 235-36 (3d ed. 2004)). Determining whether a complaint states a plausible claim for relief will be *a "context* specific task that requires the reviewing court to draw on its judicial experience and common sense." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th cir. 2011) (quoting *Iqbal,* 129 S. Ct. at 1950). Conclusory allegations are not to be considered in analyzing the plausibility of a claim. *Iqbal,* 129 S. Ct. at 1949-51. "The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Vaninetti v. Western Pocahontas Properties,* No. 11-cv-02308-LTB-MBH, 2012 WL 4359302, at * 1 (D. Colo. Sept. 24, 2012) (Babcock, J.) *(quoting Iqbal).*

### This Motion Need Not Be Converted to One For Summary Judgment.

In ruling on this motion to dismiss, this Court "may properly consider facts subject to judicial notice such as court files and matters of public record, as well as documents referred to in the complaint if the documents are central to the plaintiff's claim and their authenticity is not disputed." *Id,* (citing *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n.1 (10th Cir. 2004)).

### ARGUMENT

**I. Plaintiff's Claims Of Copyright Infringement, Based On Conclusory, Vague And Confusing Allegations, Do Not Support Claims For Direct Infringement Or Contributory Infringement.**

Malibu Media alleges two separate claims for copyright infringement. The first claim is for "Direct Infringement" under 17 U.S.C. § 106. Second Amended Complaint ¶¶ 50-56. The second claim is for "Contributory Infringement" under 17 U.S.C. § 504. Amended Complaint ¶¶ 57-66. Neither claim is supported by the conclusory, vague and confusing allegations of the Amended Complaint and the attached exhibits.

### A. The Second Amended Complaint Does Not Sufficiently Or Plausibly Allege That Malibu Media, LLC Owns The Purported Copyrights At Issue.

Ownership of the copyright allegedly infringed is an essential element of a copyright infringement claim. *La Resolana Architects, PA v. Reno, Inc.,* 555 F.3d 1171, 1177 (10th Cir. 2009). Plaintiff bears the burden of proof on ownership. *Palladium Music, Inc. v. EatSleepMusic, Inc.,* 398 F.3d 1193, 1196 (10th Cir. 2005). While 17 U.S.C. § 410(c) states in part that: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate," there is nothing in the Copyright Act to suggest that copyright registrations are, after a certain period of time, incontestable; thus, prima facie presumption in favor of facts alleged in copyright registration cannot be transformed into conclusive presumption. *Estate of Hogarth v Edgar Rice Burroughs, Inc.,* No. 00 CIV. 9569 (DLC), 2002 WL 398696, at *25 (S.D. N.Y. Mar. 15, 2002), aff'd, costs/fees proceeding, motion denied, 342 F.3d 149 (2nd Cir. 2003); *cert. denied*, 541 US 937 (2004). A finding of invalidity of copyright registrations for any reason provides a sufficient basis for a determination of "no infringement." *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 109 (2nd Cir. 2002) ("Based on the evidence in this case, the jury could have reasonably concluded that the

copyright registrations were invalid because Modlin was not an author of FormFree or Superbill Express or because the copyright registrations contained material inaccuracies.").

**Malibu Media, LLC Did Not Exist In Time To Own The Copyrights.**

The Second Amended Complaint alleges in conclusory fashion, in a headline, that "Plaintiff Owns the Copyright to the Motion Pictures" [Second Amended Complaint, page 3] and refers to screen shots of Registrations issued by the Copyright Office, attached as Composite Exhibit B. [¶¶ 13-15]. However, the statements on the Registrations that Malibu Media was an "employer for hire" conflicts with statements in the public records and filings in this and other cases that can be judicially noticed and considered by this Court in the context of this F.R.C.P 12(b)(6) motion. Those conflicts raise questions as to the plausibility of Plaintiffs assertions of ownership. This defect in Malibu Media's ownership of the alleged Works is not the first instance in this district of an entity without copyright ownership suing alleged infringers of its alleged copyrights. *See, e.g., Righthaven v. Wolf,* 813 F. Supp. 2d 1265 (D. Colo. 2011) (dismissing all cases for plaintiff's lack of standing).

This Court can take judicial notice of the public records of the California Secretary of State which state that Malibu Media, an entity assigned Entity Number 201103910088, was organized on February 8, 2011. *See* Exhibit 1 (Screenshot of California Secretary of State website page re Malibu Media and certified copy of Malibu Media LLC filing dated February 8, 2011). With the exception of the Work named "Just the Two of Us" which was first published on November 18, 2011, the formation of Malibu Media was well after the dates of first publication of each of the Works Cameron (f/k/a/ Doe #39) allegedly infringed. *See* Second Amended Complaint, Exhibit C at page 38 of 41 (dates of first publication, for example, were 10/23/2009,

11/20/2009, 3/22/2010). Since the public records reflect that Malibu Media, LLC did not exist at the time the Works were created or first published, it could not have plausibly contracted for the Works as "employer for hire" as set forth on each of the Registrations appended to the Amended Complaint as Exhibit B. *See Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410, 413 (7th Cir. 1992) (explaining that the Seventh Circuit, in promoting a bright-line rule, has held that the parties must sign the work-for-hire agreement before the copyrighted work is created in order for the work-for-hire agreement to be valid: "The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally."); *see also* 17 U.S.C. 101 (definition of "A work made for hire"); *Peregrine v. Lauren Corp.,* 601 F. Supp. 828, 829 (D. Colo. 1985) ("Section 101(1) defines a 'work made for hire' as 'a work prepared by an employee in the scope of his or her employment...'") That same bright-line rule should apply if the author/creator of the Works could not have been an employee of Malibu Media, LLC, because it appears from public records that the films were created months and years before Malibu Media, LLC ever existed.

The allegation that Malibu Media is the owner of the copyrights in the Works because Malibu Media, a California limited liability company, was an employer for hire, is rendered suspect by allegations Malibu has made in other cases that the same Works were authored by "a national or domiciliary of a treaty party; the Works were first published in a foreign nation that is a treaty party." See Complaint ¶ 13 in Case no. 1:12-cv-00397-WJM-MEH. As shown above, the records of the California Secretary of State reflect that all of that happened before Malibu Media, LLC was formed. Notably, Malibu Media, LLC does not allege that any of the Works contains a copyright notice.

If this motion to dismiss is not granted, discovery will be necessary to get to the bottom of Malibu Media's claimed ownership of the copyrights and whether there was any fraud on the Copyright Office when Malibu Media submitted applications that stated that "Malibu Media LLC, employer for hire" was the author of the "Works." *See* Amended Complaint Exhibit B (Registrations that each state: "Authorship on Application: Malibu Media LLC, employer for hire…"). Further, in other lawsuits filed by Malibu Media relating to the Works at issue here, it was alleged that certain of the Works alleged to be infringed here were not subject to Registrations at the time the other lawsuits were filed. *See* Complaint Exhibit B at 12-13 filed in *Malibu Media LLC v John Does 1-29,* Case l:12-cv-00397-WJM- MEH (stating that "X-Art Siterip #1" unregistered titles included, as examples, "Carlie Big Toy Orgasm" and "Jennifer Naughty Angel"). Although filed more than five months before the present action, the Complaint in Case 1:12-cv-00397-WJM-MEH alleges that the same "SHA-1 hash value of 21AC0B46088E7C235A23D4379 BE65A1840E9B77 (the 'Unique Hash Number')" was associated with the alleged copying of the Works at issue in this case. *Compare* Second Amended Complaint ¶ 43 in this action *with* Complaint ¶ 40 in Case 1:12-cv-00397- WJM-MEH. This comparison shows that rather than taking action to protect its alleged copyrights by removing the Works from websites that were the subject of alleged BitTorrent copying, Malibu Media merely registered the Works that were not yet registered, such as "Carlie Big Toy Orgasm," suggesting that Malibu Media encouraged the BitTorrent file sharing, but just wanted to make sure that all of its Works were registered.

      **B. Plaintiff's Claims Are Barred By Plaintiffs Authorization, Permission, Or Consent To Cameron's Alleged Copying Of Plaintiffs Alleged Works.**

Assuming, *arguendo*, that Malibu Media, LLC was the author of and owns the purported copyrights at issue; and, that the pornographic movies at issue are subject to copyright protection, a claim for infringement still requires the copying of a protected work without the consent, authorization or permission of the owner. *See Schmidt v. Holy Cross Cemetery, Inc.,* No, 92-2436-JWL, 1993 WL 512414, at *2 (D. Kan. Nov. 2, 1993) (reciting the elements of copyright infringement). Malibu's bare and conclusory allegation that it "did not authorize, permit or consent to Defendants' copying of its Works" [Amended Complaint ¶ 53] is belied by allegations in its complaints in other civil actions that Malibu knew months before Cameron is alleged to have copied the Works, in May 2012, that the Works were subject to copying through use of BitTorrent programs. *See e,g.,* Complaint filed February 15*,* 2012 in *Malibu Media LLC v John Does 1-29,* Case 1: 12-cv- 00397-WJM-MEH, ¶ 2 ("Throughout this Complaint the word 'Works' refers to 57 movies contained on the subject website."); ¶ 15 ("Plaintiff registered 11 of the *57* movies contained on the subject website with the United States Copyright Office"); ¶ 29-30 ("Torrent Sites' are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol…. Upon information and belief, each defendant went to a torrent site to upload and download Plaintiff's copyrighted Works"). With knowledge that "Torrent Sites" were making its "X-Art Siterip #1" Works available for copying, Malibu Media did nothing to protect its Works. Rather, Malibu Media permitted the "Torrent Sites" to continue to make the "X-Art Siterip #1" Works available for copying. The allegations of the Second Amended Complaint and companion complaints reveal that the only actions taken by plaintiff were to register additional movies that comprised the "X-Art Siterip #l" Works, to retain the services of IPP, Limited to monitor copying and track the

Unique Hash Number, and to commence litigation against folks who may or may not have used their IP address to copy the Works. Second Amended Complaint ¶ 32-47. The Second Amended Complaint fails to allege that Malibu Media did anything to have torrent sites remove or otherwise disable or take down the "X-Art Siterip #1" Works from the torrent websites. *See generally,* Second Amended Complaint. Under these circumstances, Plaintiff cannot plausibly allege that it did not authorize, consent or permit the copying of its Works.

### C. Plaintiff's Claim Of Contributory Infringement Should Be Dismissed.

"For contributory infringement, a plaintiff must allege (i) direct copyright infringement by a third-party; (ii) knowledge by the defendant of the direct infringement; and (iii) material contribution to the infringement." *Shell v. American Family Rights Association,* 09-v-00309-MSK-KMT, 2012 WL 4476641, at *14 (D. Colo. Sept. 28, 2012). Because Malibu Media cannot plausibly be the owner of the alleged copyrights at issue, the contributory infringement claim should be dismissed for the same reason that the direct infringement claim should be dismissed. Further, the Second Amended Complaint alleges that Cameron's IP address is located in Denver and that Cameron's IP address was associated with a download of "X-Art Siterip #1" on May 24, 2012; and that certain of the IP addresses of the other Doe Defendants are located in Denver but most are located in other places, such as Silverthorne, Littleton, Aurora, Thornton, Rocky Ford, Colorado Springs and Paonia. Second Amended Complaint, Exhibit A. In Exhibit C, Malibu alleges that the Unique Hash Value was detected as being associated with the various IP addresses as early as May 15, 2012 and as late as July 5, 2012. In other lawsuits filed in this district involving the alleged downloading of Works from "X-Art Siterip #1," the same Unique Hash Value referenced in this case was detected as being associated with IP

8

addresses of Doe defendants in those cases as early as November 21, 2011 and as late as September 19, 2012. *See, e.g., Malibu Media, LLC v. John Does 1-29,* l:12-cv-00397-WJM-MEH; *Malibu Media, LLC v. John Does 1-28,* No. 1:1 2-cv-00834-DMB-MEH; *Malibu Media v. John Does 1-37,* 1:12-cv-02595-WYD-MBH.

Malibu Media has alleged in this Second Amended Complaint and in other Complaints filed in this District that:

> "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There "are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, and www.ExtraTorrent.com."

Second Amended Complaint ¶ 32; Complaint ¶ 30 filed in *Malibu Media v. John Does* 1-37, 1:12-cv- 02595-WYD-MEH. Although plaintiff further alleges that "[u]pon information and belief, each Defendant went to a torrent site to upload and download Plaintiffs copyrighted Works [Second Amended Complaint ¶ 33], Malibu Media does not and cannot allege that each defendant downloaded and uploaded the Works from the same website.

Malibu Media's allegations are insufficient to plausibly allege contributory infringement by Cameron with the other defendants. In a recent improper joinder case, the court applied reasoning that, also, warrants dismissal of Plaintiff's contributory infringement claim**:**

> Plaintiff's log identifying the Doe defendants by IP addresses and the dates and times of their alleged unlawful activity reflects that the alleged unlawful activity occurred at disparate and distant locations over a span of at least two months. In this regard, "[p]laintiff has not shown that the defendants acted in concert simply by appearing [in] the same swarm at completely different times." *Hard Drive Productions, Inc. v. Does 1-90,* No. C 11-03825 HRL, 2012 US. Dist. LEXIS 45509, 2012 WL 1094653, at *6-*7 (ND. Cal. Mar.30, 2012). Indeed, given the technical complexities of BitTorrent swarm functions, [footnote omitted] it appears unlikely that the 59 Doe defendants engaged in any coordinated effort or concerted activity.

*Malibu Media v Does* 1-59, No. 2:12-cv-2481 JAM-DAD, 2012 U.S. Dist. LEXIS 146888, at *8. 9 n.3 (Oct. 11, 2012) (Drozd, Magistrate Judge). Since Plaintiff cannot plausibly allege contributory infringement by Cameron with the other defendants, the contributory infringement claim should be dismissed.

**WHEREFORE**, Tara W. Cameron prays that this Honorable Court dismiss the Second Amended Complaint for failure to state a claim against her.

Dated: December 27, 2012

          Respectfully Submitted,

          Riggs, Abney, Neal, Turpen, Orbison & Lewis

          s/Steven Janiszewski
          Steven Janiszewski
          Bar Registration Number: 14634
          7979 E. Tufts Avenue Parkway, Suite 1300
          Denver, Colorado  80237
          Telephone: (303) 298-7392
          E-mail: sjaniszewski@riggsabney.com

### CERIFICATE OF SERVICE

I hereby certify that on December 27, 2012, I electronically filed the foregoing **TARA W. CAMERON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, WITH INCORPORATED AUTHORITY** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jason Kotzker
Jason@klgip.com

John Allan Arsenault
john.arsenault@frontrangelegalservices.com

s/ Steven Janiszewski
Steven Janiszewski