FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2013 FEB 11 AM 11:24
JEFFREY P. COLWELL
CLERK
BY________DEP. CLK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.1:12-cv-01953-WYD-MEH

MALIBU MEDIA, LLC,

Plaintiff,

v.

BRIAN BATZ, TARA W. CAMERON, JOHN DOES 7, 9-11, 15-31, 33-36, and 39,

Defendants.

"The following motion was originally prepared by attorney David Kerr for a similar case involving Plaintiff Malibu Media. However, the Defendant for whom it was prepared was dismissed prior to its filing. (*See Malibu Media v. Andrew Schinsky, et al.*, Civil Action No. 12-cv-01394-WYD-MEH; Dck. No. 102). Mr. Kerr does not represent me nor has he prepared this motion for me or advised me in this matter. He has simply made it available to me, as well as other pro se defendants and attorneys upon request. I am proceeding in this matter *pro se*. This motion is being used with Mr. Kerr's permission and I am responsible for all of its contents, both legal and factual."

---

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF STANDING**

---

Defendant John Doe #22, pursuant to Fed.R.Civ.P. 12(b)(1), hereby moves to dismiss Malibu Media, LLC's Complaint for lack of standing. In support thereof, Defendant states as follows:

INTRODUCTION

Malibu Media, LLC ("Malibu" or "Plaintiff") came into existence on February 8, 2011. Almost immediately thereafter, it filed a tsunami of lawsuits alleging infringement of copyrighted works that it did not create. Several of these suits were filed on the very day that Malibu Media, LLC came into existence.[1] These suits accuse thousands of "John Doe" defendants of downloading materials through the use of bit torrent technology ("BitTorrent"). Despite its national campaign, Malibu has never taken a case to trial, nor have its members or officers been subject to a 30(b)(6) deposition. In fact, any time such an event seems likely, Malibu cuts and runs. In this district alone, Malibu has filed over 50 separate actions against hundreds of John Doe defendants, with new cases being filed monthly.

However, it appears that many of these cases, including the instant action, were brought with knowledge that Plaintiff lacked standing. Although Malibu has extracted many settlements as a serial litigant in this district and throughout the country, Malibu does not own the right to sue for many of the works the Complaint claims were infringed. In fact, Malibu may have lacked standing to file the initial complaint – from where it gathered all of the early discovery in this case. Set forth in more detail below, many of the Works complained of were created before Malibu Media even existed and the change of title is incomplete. Malibu does not have an assignment allowing it to sue for past infringement, which it concealed from the Court, the Defendants, and those parties with whom Malibu settled.

Having been challenged in this and other jurisdictions[2] as to its standing to even bring such lawsuits, Plaintiff, realizing the "defect" in the specific Copyright Registrations asserted in

---

[1] See Malibu Media, LLC v. John Does 1-15, 2:12-cv-00664-CMR, Malibu Media, LLC v. John Does 1-17, 2:12-cv-00665-CDJ; Malibu Media, LLC v. John Does 1-10, 2:12-cv00666-TJS, Malibu Media, LLC v. Does 1-11, 2:12-cv-00667-MAM, Malibu Media, LLC v. John Does 1-22, 2:12-cv-0068-JCJ.

[2] *See Malibu Media, LLC, v. Brian Batz et al.*, Civil Action No. 1:12-CV-01953-WYD-MEH (Dck. 55) (Colo. 2012) (Stricken on page length grounds with the Doe unilaterally dismissed before re-filing and adjudication on the merits); *Malibu Media, LLC v. Does 1-13*, 2:12-cv-12586-PJD-MJH, (Dck. No. 41) (Mich. 2012) and *Malibu Media v. John Does 1-22*, Case 5:12-cv-02088 (Dck. No. 55-1)(E. D. Penn. 2012).

this action attempted to re-engineer standing filing Supplemental Registration Forms CA for "the Works" on or about September 13, 2012 (Exhibit A), all based upon a subsequent, and undated, assignment which now alleges that "the Works" were, in fact, created by a current non-party individual named Brigham Field and transferred through an assignment of copyright to Malibu Media, LLC after the company was formed (Exhibit B). Essentially, Malibu's response to the standing issue raised by various Doe Defendants was to create and file an "after-the-fact" assignment document before the U.S. Copyright Office in the hopes of re-creating standing.[3]

However, standing must exist when this action was commenced. Here, the supplemental filings and assignment from Brigham Field to Malibu Media LLC are simply inoperative as a matter of law. In addition, the assignments are fatally defective as they assign the rights, title and interest in "the works" but do not specifically include <u>any</u> right(s) to sue for past infringements. As demonstrated below, such defects, as a matter of law are fatal and this case must be dismissed.

<u>PROCEDURAL & FACTUAL HISTORY</u>

On May 30, 2012, Malibu Media, LLC ("Plaintiff"), filed the present action alleging statutory Copyright Infringement claims of "the Works". The Plaintiff, by filing this action, stated that they are in fact the "owner" of "the Works" at the time this action was filed (Complaint at ¶ 49) as the Copyright Act provides that only "[t]he legal or beneficial owner of an

[3] Malibu Media, LLC originally claimed that the Works were "made for hire" for it even though Malibu Media, LLC did not exist on the putative "creation date(s)" set forth by the Plaintiff itself in the original copyright filings attached to the complaint. When a claimant has not acquired rights to a work he or she is registering, the copyright statute requires that the copyright application include "a brief statement of how the claimant obtained ownership of the copyright." 17 U.S.C. § 409(5). "Willfully failing to state a fact, (or willfully misstating a fact), which may have caused the copyright office to reject the application is grounds for invalidating the registration." M. Nimmer & D. Nimmer, *Nimmer on Copyright,* § 7.20 at 7–202. "A registration thus obtained is not only invalid, but is "'incapable of supporting an infringement action.'" *Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 456 (2d Cir.1989). Moreover, 17 U.S.C.A. § 506(e) provides that "[a]ny person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section §409, or in any written statement filed in connection with the application, shall be fined not more than $2,500."

exclusive right under a copyright is entitled … to institute an action for any infringement…" 17 U.S.C. § 501(b).

## II. LEGAL ARGUMENT.

### A. MALIBU MEDIA LACKS STANDING TO PROSECUTE THIS ACTION BECAUSE IT DOES NOT OWN THE WORKS IN THE COMPLAINT

Ownership of the copyright allegedly infringed is an essential element of a copyright infringement claim. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009). Plaintiff bears the burden of proof on ownership. *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005). A finding of invalidity of copyright registrations for any reason provides a sufficient basis for a determination of "no infringement." *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 109 (2nd Cir. 2002) ("Based on the evidence in this case, the jury could have reasonably concluded that the copyright registrations were invalid because Modlin was not an author of FormFree or Superbill Express or because the copyright registrations contained material inaccuracies.").

The Complaint alleges in conclusory fashion that plaintiff owns the Copyright in the Works and attaches screen shots of Registrations issued by the Copyright Office (Complaint ¶ at 49; Exhibit A-B). However, the statements are at odds with the facts. On the face of Plaintiff's exhibits, it appears that the movies complained of in Malibu's Complaint were created by an employee, namely "Brigham Field." It may be judicially noticed that Malibu Media, LLC was formed in California on February 8, 2011. (Exhibit C.) However, many of the movies at issue in the Amended Complaint <u>were created before Malibu Media, LLC even existed</u>. Thus, on the face of the Complaint, it is evident that Malibu was completely separate from the creative process of producing the films in question.

**A. MALIBU MEDIA'S OWNERSHIP OF THE WORKS AT ISSUE HAS BEEN CHALLENGED**

On June 14, 2012, Malibu filed an identical action in the Eastern District of Michigan against 13 John Doe Defendants alleging statutory Copyright Infringement claims. Much like this instant action, in its Complaint, Malibu stated that they owned the Works at the time this action was filed. The Copyright Act provides that only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement..." 17 U.S.C. § 501(b). The defendants in that case filed Motions to Quash Malibu's third party subpoena to ascertain their identities on a number of grounds, including that the named Plaintiff lacked standing to bring the action. This motion remains pending before the Michigan District Court. Caught in a difficult situation, Malibu tried to correct the deficiency by filing new registrations with the copyright office on September 13, 2012, through its counsel, Lipscomb, Eisenberg & Baker, P.L. (Exhibit A). In these new registrations, Malibu stated to the copyright office:

> This particular work was created by Brigham Field and was transferred through an assignment of copyright to Malibu Media, LLC after the company was formed and was not originally created as a work for hire. Brigham Field's current arrangement with Malibu Media, LLC is that the movies he creates are a work for hire and owned by Malibu Media, LLC. This agreement is in writing. When he instructed his agent to register this work, he mistakenly told his agent to register this work as a work for hire authored by Malibu Media, LLC.

(*Id.*) When asked to produce the "assignments in writing", Malibu produced undated written assignments for the following movies[4] (ECF 32-1, Exhibit B):

- Carlie Beautiful Blowjob (November 11, 2011)
- Carlie Leia Strawberries and Wine (November 18, 2011)
- Kat Translucence (November 19, 2011)
- Katka Cum Like Crazy (November 21, 2011)
- Katka Sweet Surprise (August 4, 2010)

[4] Defendant would note that 15 of the 16 movies allegedly assigned in these undated documents are at issue in the instant action. (See Complaint Ex. C: (Dck No. 63-3).

- Kristen Girl Next Door (August 25, 2012)
- Leilia Sex on the Beach (December 22, 2010)
- Mina's Fantasy (June 25, 2010)
- Megan Morning Bath (February 12, 2010)
- Tiffany Teenagers in Love (December 29, 2010)
- Tori The Endless Orgasm (December 20, 2010)
- Carlie Big Toy Orgasms (March 22, 2010)
- Daddy's Office (November 12, 2010)
- Girl In My Shower (October 23, 2009)
- Jennifer Naughty Angel (November 5, 2010)
- Leila Faye Awesome Threesome (February 2, 2011)
- Leila Sex On The Beach (December 22, 2010)

However, there was a critical defect with the Assignments — Brigham Field only assigned the rights, title and interest in the works to Malibu. The Assignments fail to expressly include any of the exclusive rights enumerated under Section §106, and do not include any accrued rights to sue for past infringements as required by controlling law. *Id.*

**1. Malibu Media Does Not Own Any Exclusive Rights in the Identified Works**

Malibu alleges in its Amended Complaint that "Plaintiff is the owner of the copyrights for the Works..." (Complaint at ¶ 9). While Malibu may own the "registrations," this is insufficient to confer standing to prosecute a copyright infringement claim. A plaintiff must also own exclusive rights in the work. *Sybersound Records, Incorporated v. UAV Corporation*, 517 F.3d 1137, 1146 (9th Cir. 2008). The Assignment ostensibly conveying ownership from Mr. Field to Malibu Media does not mention any exclusive rights in the works. In fact, the Assignment does not even contain the word "exclusive." (Exhibit B.) Accordingly, the assignments are nothing more than licenses, and thus insufficient to confer standing.

This principle was highlighted in *Sybersound Records, Incorporated v. UAV Corporation*, where TVT Records attempted to provide Sybersound with a blanket assignment of rights similar to that found in this case – but ultimately failed. 517 F.3d at 1146. TVT assigned

its copyrighted interest in the use of its works to Sybersound, and Sybersound set off to sue infringers of its newly acquired rights. *Id.* TVT, however, was not the sole owner of these copyrights. Because TVT's assignment was nonexclusive, Sybersound had acquired only a non-exclusive license, "which gives Sybersound no standing to sue for copyright infringement." *Id.*

In this case, the Assignment contains no provision of any exclusive rights from Field to Malibu Media. The assignment is silent as to what, if any, rights Field has within the films. Rather than transferring any discernible exclusive rights under Section §106 to Malibu Media, Mr. Field has executed what is essentially a quit-claim deed to Malibu Media, giving Plaintiff a jumble of unidentified rights (or perhaps none at all) that, on the face of the assignment, do not include the rights required to sustain an infringement action: exclusive rights under Section 106.[5] Absent any indication that Field possessed full, undivided interest in the copyrighted works or exclusive rights therein, there is no basis on the face of the assignment for finding that Malibu Media acquired any exclusive rights and nothing in the assignment addresses past infringement.[6]

Courts from coast to coast have consistently held that exclusive rights are needed to sustain an action for copyright infringement. *Hyperquest, Inc. v. N'Site Solutions, Inc.,* 632 F.3d 377, 383 (7th Cir. 2011); *Sybersound*, 517 F. 3d at 1146; *U.S. v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008); *Silvers v. Sony Pictures Entertainment,* 402 F.3d 881 (9th Cir. 2005); *ABKCO Music Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *Eden Toys, Inc. v.*

---

[5] Even if all exclusive rights were granted, the right to sue for past infringement, as discussed *infra*, is not transferred unless the instrument of transfer expressly says so, as argued *infra*.

[6] The assignment's vague language is eerily similar to the same quitclaim language used by now-defunct copyright infringement enforcement operation Righthaven LLC, which used similarly vague language concerning the rights it acquired in the works underlying its infringement lawsuits. Upon discovering a secret agreement between Righthaven LLC and the works' original creators which specifically deprived Righthaven LLC of exclusive rights in the works, U.S. District Judge Hunt ultimately characterized Righthaven LLC's reliance on this quitclaim language as "disingenuous," writing that: Righthaven led the district judges of this district to believe that it was the true owner of the copyright in the relevant news articles. Righthaven did not disclose the true nature of the transaction[.] As the [the original creator] *retained* the exclusive rights, never actually transferring them to Righthaven. *Democratic Underground*, 791 F. Supp. 2d at 976

*Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982); *Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1273 (D. Colo. 2011); *Righthaven LLC v. Democratic Underground LLC et al.*, 791 F. Supp. 2d 968 (D. Nev. 2011).

Specifically, the right to sue for copyright infringement under Section §501 requires ownership of exclusive rights. *Silvers*, 402 F.3d at 889-890, *citing Eden Toys*, 697 F.3d at 32 and *ABKCO Music*, 944 F.2d at 980. The rights Malibu Media obtained from Field are determined by the agreement's substantive terms. *Hyperquest*, 632 F.3d at 383. When the agreement lacks "clearly delineated exclusivity over at least one strand in the bundle of rights" contained in Section §106, the putative copyright owner lacks the right to bring suit. *Hyperquest*, 632 F.3d at 384-85. Courts across the nation have come to the same substantive conclusions. See, e.g., *Hyperquest,* 632 F.3d at 383; *Sybersound*, 517 F. 3d at 1146; *Chalupnik*, 514 F.3d at 753; *Silvers*, 402 F.3d at 881; *ABKCO Music*, 944 F.2d at 980.

Indeed, in *Righthaven LLC v. Wolf*, the U.S. District Court for the District of Colorado considered the question of what copyright rights are required to have standing to sue for infringement under Section §501. 813 F. Supp. 2d at 1268-69. Based purely on statutory analysis, District Judge Kane found an "expansive" view of the right to sue is inconsistent with the Copyright Act's principles. *Id.* at 1271-72. Thus, while owners of exclusive rights may bring suit, "a complete stranger to the creative process" cannot institute an action for infringement. *Id.* at 1272. Judge Kane's logic is fully consistent with the Copyright Clause. U.S. Const. Art. I § 8 cl. 8. The purpose of the Copyright Clause is to incentivize the creation of a robust public domain, although many also believe that its purpose is to incentivize authors to create new works.[7] *See Sony Corp., v. Universal City Studios*, 464 U.S. 417, 429, 431-32 (1984)("The

---

[7] The Copyright Clause and Act's primary purposes are to incentivize individual creators to undertake the production and distribution of original works while fostering the creation of a robust public domain. *Golan v.*

copyright law . . . makes reward to the owner a secondary consideration..... [c]reative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts.") That is what seems to have happened here: Plaintiff is an LLC created for the sole purpose of bringing copyright infringement suits and shielding the real parties in interest from liability if such litigation failed and attorneys' fees were awarded, *a la* Righthaven. The failure of such a scheme should be clear if anyone reviews the history of that ill-fated enterprise.[8]

Field's assignment to Malibu Media is insufficient to demonstrate Plaintiff is nothing more than a litigation vehicle and a "complete stranger to the creative process" prohibited from bringing suit. *Wolf*, 813 F. Supp. 2d at 1272, *citing Silvers*, 402 F.3d at 891. The assignment is silent as to Field's ownership interests in the works. Rather than stating that he is the sole and exclusive owner of the works, the agreement uses the conceit of Field assigning all of his "right, title and interest" in the works without ever identifying what those rights might be. Field cannot give away more than he possessed, and it is in no way clear from the assignment that Field had any exclusive rights that he may validly assign to Malibu. Further supporting this view is the

---

*Gonzales*, 501 F.3d 1179, 1188 (10th Cir. 2007). The Framers "intended copyright itself to be the engine of free expression." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985). The monopoly copyright laws confer onto creators primarily exists to incentivize creation of works that will benefit the public. Id. at 546 ("copyright thus rewards the individual author in order to benefit the public"). While copyright's immediate effect is to protect an author's labor, its overarching goal is "to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). Congress has pursued this goal using the economic philosophies underpinning the Copyright Act to encourage individual effort by personal gain as "the best way to advance public welfare through the talents of authors." *Mazer v. Stein*, 437 U.S. 201 219 (1954). "The sole interest of the United States and the primary object in conferring the monopoly [of copyright] lie in the general benefits derived by the public from the labors of authors." *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932).

[8] The relationship between Malibu Media and x-art.com is equally suspect. Again, it appears that mere days after again being challenged as to their standing, Plaintiff's domain name x-art.com underwent a transfer of ownership to Malibu Media, demonstrating that Malibu, as a litigation vehicle was improperly exercising the bare right to sue for infringement, and that this was completely separate from the creative process of producing the films in question and the exercise of all other §106 right by some other entity. Perhaps more troubling is that fact that the domain x-art.com is apparently now for sale. (Ex. D).. Such actions can only lead to the inference that Malibu Media was formed merely as a litigation vehicle and having been challenged is trying to recreate standing that did not exist.

assignment's silence on the issues of exclusivity, and the failure to identify even a single right under Section §106 that Field transferred to Malibu (Exhibit B), coupled with and the fact that Malibu sought to conceal such assignments from the courts, the Defendants (the assignments nor supplementary registrations were identified in Plaintiff's Complaint and/or Rule 26 disclosures) and perhaps most importantly, the many punitive Does from which it already has collected settlements estimated to be possibly in the millions of dollars.

Cumulatively, these many flaws – the lack of identification of what ownership interest was transferred, the silence as to exclusivity, and the failure to identify any exclusive rights assigned to Malibu Media – are insurmountable. Malibu cannot show that it possesses a single exclusive right in the works it claims to own as of the date suit was filed. The undated and after-the-fact assignment represents a careful sleight of hand that says nothing, but is intended to create the appearance of standing. The assignment fails to establish Malibu Media possessed any kind of exclusive rights that would entitle it to sue Defendant for copyright infringement as of the date of suit. Accordingly, Malibu lacks standing to bring this action, and thus is must be dismissed under Fed. R. Civ. P. 12(b)(1).

**2. Malibu Media Does Not Possess The Right to Sue Defendant for Previous Infringement of its Now-Owned Works.**

Even if Malibu currently owns exclusive rights in the copyrighted works, Plaintiff failed to plead when it acquired such ownership. Malibu Media's undated copyright assignment is, like its Amended Complaint, un-illuminating. Malibu Media cannot surmount the conclusion that it failed to acquire any accrued causes of action for infringement pre-dating Defendant's alleged infringements and Malibu Media LLC's very existence.

The Copyright Act provides only that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled...to institute an action for any infringement of that particular

right committed while he or she is the owner of it." 17 U.S.C. 501(a) (1996) (emphasis added). Rights under a copyright may be assigned; however, [...] if "accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *Fisher v. United Feature Syndicate, Inc.,* 37 F. Supp. 2d 1213, 1217 (D. Colo. 1999) (citing *ABKCO Music. Inc. v. Harrisongs Music. Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) Specifically, "the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner[,] and the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment." *Id.*

This right to sue for past, or accrued[9], infringement claims can be transferred to another party so long as it is expressly included in the assignment along with an exclusive right enumerated within Section §106. *Hyperquest,* 632 F.3d at 383; *Silvers*, 402 F.3d 881; *Wolf*, 813 F. Supp. 2d at 1273. This express legal requirement has been recognized by this, and numerous other Courts specifically holding that to "effectively assign the right to pursue an infringement claim which accrued prior to the executed assignment...the assignor must explicitly transfer the causes of action to the assignee." *Huebbe v. Okla. Casting Co.*, 663 F. Supp. 2d 1196, 1205-1206 (W.D. Okla. 2009); *Fisher*, 37 F.Supp. 2d at 1223-37 (citing *ABKCO*, 944 F.2d at 980); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982).

Other courts have been even more specific, holding that for accrued claims of infringement to transfer to an assignee, the assignment must "cover in no uncertain terms chooses in action for past, prior, accrued damages." *Prather v. Neva Paperbacks, Inc.*, 410 F.2d

[9] "A cause of action for copyright infringement under section 507(b) of the Copyright Act accrues 'when one has knowledge of a violation or is chargeable with such knowledge.'" *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1216 (D. Colo. 1999) (quoting *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)). Because section 507(b) is silent regarding the accrual of a copyright claim, "a claim accrues when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Home Design Services, Inc. v.B&B Custom Homes, LLC*, 509 F. Supp. 2d 968, 972 (D. Colo. 2007). By the face of Plaintiff's own assignment the current claism accrued prior to any claim of ownership by Malibu Media.

698, 700 (5th Cir. 1969). Even where the entire "right, title and interest" in a copyright is assigned to another party, such an assignment **does not include the right to sue for past infringements**. *Kriger v. MacFadden Pubs., Inc.*, 43 F. Supp. 170, 172 (S.D.N.Y. 1941), *citing U.S. v. Loughrey*, 172 U.S. 206, 212 (1898) (holding that purchase of a parcel of land does not carry with it "a right of action for prior trespasses or infringements," but "they only pass with a conveyance of the property itself where the language is clear and explicit to that effect"); see also *Wolf*, 813 F. Supp. 2d at 1273; *Hoehn*, 792 F. Supp. 2d 1138; *Democratic Underground LLC et al.*, 791 F. Supp. 2d 968.

If a party does not expressly assign the right to sue for past infringements, then that right is retained by the initial copyright owner. *Wellness Publ. v. Barefoot*, Copy. L. Rep. (CCH) P29, 507 (D.N.J. Jan. 8, 2008) ("An assignor retains such a right unless it is expressly assigned to the assignee along with the copyright."); *see also Silvers* 402 F.3d at 881; *ABKCO Music Inc. v. Harrisongs Music, Ltd.*, 944 F.2d at 980; *Wolf*, 813 F. Supp. 2d at 1273. As it did not gain this right before filing this action, it cannot resurrect standing with a new assignment. Post-filing corrective assignments cannot resurrect standing. See *Wolf*, 813 F. Supp. 2d at 1273; *Hoehn*, 792 F. Supp. 2d 1138; *Democratic Underground LLC et al.*, 791 F. Supp. 2d 968.

As clearly seen in Exhibit B, Field's assignment to Malibu Media fails to explicitly transfer these accrued claims to Plaintiff. To the extent the assignment was executed after Defendant's alleged infringement, Malibu Media, lacking the right to sue for accrued infringement, has no standing to pursue this action. The Amended Complaint alleges infringement occurring between April, 17th, 2012 through May 9th, 2012. Field's assignment to Malibu Media covers works first published as recently as August 25, 2012 – more than 3 months after the last infringement alleged in the Complaint (*Id.*) – and thus the assignment could only

have been completed on or after August 25, 2012. Field's assignment fails to grant Malibu the right to pursue claims for past infringement, thus Malibu lacked standing to bring a claim for any of the infringements alleged in the Amended Complaint.

**B. MALIBU MEDIA CANNOT RECREATE STANDING**

Plaintiff cannot retroactively obtain the right to sue for prior infringement by altering the rights it owns once suit has been filed. *Hoehn*, 792 F. Supp. 2d at 1147; *Democratic Underground*, 791 F. Supp. 2d at 974. "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 4 (1991), *quoting Newman-Green, Inc. v. Alfonzo Larrain*, 490 U.S. 823, 830 (1989) (emphasis in *Lujan*). Article III standing is a jurisdictional requirement that cannot be waived and may be brought up at any time in the proceeding. *Zurich* at 531; *United States v. Blanco,* 844 F. 2d 344, 349, n.4 (6th Cir. 1988); Fed. R. Civ. P. 12(h)(3).

Since the public records reflect that Malibu Media did not exist at the time the "Works" were created or first published,[10] it could not have plausibly contracted for the "Works" as "employer for hire" as set forth on each of the Registrations appended to the Amended Complaint. *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) (explaining that the Seventh Circuit, in promoting a bright-line rule, as the present motion seeks to hold that the parties must sign the work-for-hire agreement before the copyrighted work is created in order for the work-for-hire agreement to be valid: "The writing must precede the creation of the property in order to serve its purpose of identifying the (non-creator) owner unequivocally."); *see also* 17 U.S.C. 101 (definition of "A work made for hire"); *Peregrine v.*

[10] Defendant would note that there exist significant discrepancies between the dates of first publication of the copyright registrations in Plaintiff's exhibits and the purported assignment. Such differences, which in some cases are by as much as two years, further raise the possibility that Malibu Media has not been completely forthright with this Court or the Copyright Office.

*Lauren Corp.*, 601 F. Supp. 828, 829 (D. Colo. 1985) ("Section 101(1) defines a 'work made for hire' as 'a work prepared by an employee in the scope of his or her employment....'").

That same bright-line rule should apply if the author/creator of the Works could not have been an employee of Malibu Media because it appears from public records that the films were created months and years before Malibu Media ever existed.[11] Court's may allow parties to amend defective allegations of jurisdiction, it may not allow the parties to amend the facts themselves. *Newman-Green, Inc. v. Alfonzo- Larrain*, 490 U.S. 826, 830 (1989)). Thus, there is no risk of Plaintiff amending this assignment to cure its defects; as Malibu Media lacked Article III standing at the time of filing; it has no means to resuscitate its case. *See Id.*

### C. MALIBU MEDIA'S SUPPLEMENTAL COPYRIGHT REGISTRATIONS ARE INAPPROPRIATE UNDER 37 C.F.R. 201.5, AND REGARDLESS FAIL TO RECREATE STANDING

Plaintiffs after-the-fact Supplemental Registrations, (Exhibit A), cannot retro-actively generate standing and were obviously filed in an attempt to "amend the facts" of the case and "save" its approximately 400 pending civil actions around the country.[12] Regardless, in addition to being ineffective to recreate standing, *Newman-Green, Inc.* supra, such supplemental registrations are an inappropriate vehicle to fix misrepresentations of ownership. Specifically, 37 C.F.R. 201.5(b)(2)(iii) demonstrates that "[s]upplementary registration is not appropriate: ...to reflect a change in ownership". 37 C.F.R. 2015(b)(2)(iii)(A). Such attempts to reflect a change in ownership that occurred on or after the effective date of the basic registration is completely contrary to the express wording of Copyright Office Circular 8 which states in pertinent part that:

---

[11] The allegation that Malibu Media is the owner of the copyrights in the "Works" because Malibu Media, a California limited liability company, was an employer for hire, is further made suspect by allegations in other cases [allegations omitted in this case] that the very same "Works" were authored by "a national or domiciliary of a treaty party; the Works were first published in a foreign nation that is a treaty party." See Complaint ¶ 13 in Case 1:12-cv-00397- WJM-MEH. As addressed above, the records of the California Secretary of State reflect that all of that happened before Malibu Media, LLC existed as an entity.

[12] As of December 3, 2012 Malibu media has filed 381 lawsuits implication approximately 600 putative Defendants.

"If ownership of the copyright has changed since the basic registration was made....Form CA is not appropriate." (emphasis added). Clearly, Malibu Media, LLC, as the putative Copyright Claimant, is attempting to avail itself to the protections of "Supplementary Registration" under 37 C.F.R. 201.5 and Copyright Office Circular 8. However, such mechanism is contrary to not only the law and administrative practices of the Copyright Office.

**D. THIS CASE IS RIPE FOR SUMMARY ADJUDICATION**

Based on these fatal defects, Defendants believes that the current motion is ripe for summary adjudication. *See Righthaven LLC v. Wolf*, 813 F. Supp. 2d at 1267(converting Defendant's Rule 12(b)(1) motion to dismiss into a Rule 56 motion for summary judgment because Plaintiff's claim of federal copyright infringement were intertwined with the jurisdictional issues raised in Defendant's moving papers.)

**WHEREFORE**, Defendant respectfully request that:

1. This Court issue an order finding that Plaintiffs lack standing and dismissing this case.
2. Plaintiff be required to send a copy of such order to each current Defendant, putative Doe, as well as all punitive Defendants that previously settled any claims with Plaintiff.
3. All copyright actions brought by Malibu Media in this District be dismissed pending a show cause order to establish proper standing.
4. Each Defendant be declared the prevailing party and be awarded fees and costs pursuant to Section §505 of the Copyright Act. See *Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1271 n.2 (D. Colo. 2011) (awarding attorney's fees after dismissing Plaintiff's copyright claims for lack of standing "to discourage the abuse of the statutory remedies for copyright infringement.") and
5. Any and all other relief as this Court deems appropriate.

Respectfully Submitted on February 11, 2013